UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE INSURANCE CO. OF AMERICA, | ) ) ) |
| Plaintiff / Counterclaim Defendant, | ) ) |
| vs. | ) ) ) |
| BRIDGETTE SWYERS, | ) ) |
| Defendant / Counterclaim Plaintiff. | ) |

Case No. 4:20-CV-00243 AGF

## MEMORANDUM AND ORDER

This action for declaratory judgment regarding uninsured motorist ("UM") coverage is before the Court on the motion (ECF No. 10) for summary judgment filed by Nationwide Insurance Co. of America ("Nationwide"). For the reasons set forth below, the Court will grant Nationwide's motion.

## BACKGROUND

For the purpose of the motion before the Court, the facts as established by the record are as follows. On October 8, 2016, Bridgette Swyers ("Ms. Swyers"), suffered significant injuries while attending a "Buchanan Mudfest" event, when another attendee attempted to pull an unidentified vehicle out of the mud using a tow rope; the tow rope detached from the unidentified vehicle, and a metal hook attached to the rope struck Ms. Swyers in the head. As a result, Ms. Swyers suffered a fractured skull, shattered eardrum, broken jaw, and other significant injuries which required multiple surgeries.

Ms. Swyers was 23 years old and resided with her mother, Cheryl Burke ("Ms. Burke"), at the time of the incident. Ms. Burke maintained two insurance policies issued by Nationwide Insurance through which she received UM coverage: Policy No. PPNM0059610725, insuring a 2007 Pontiac G6, with effective dates of May 30, 2016 to December 1, 2016; and Policy No. PPNM0052316246, insuring a 2010 Honda Odyssey with effective dates of May 22, 2016 to November 22, 2016 (collectively, the "Policies").

The Policies contain the following relevant provisions:

### DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations.

\* \* \*

**G.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. . . .

\* \* \*

**I.** "Occupying" means in, upon, getting in, on, out or off. . . .

\* \* \*

**L.** "Your covered auto" means:

1. Any vehicle shown in the Declarations. . . .

\* \* \*

### UNINSURED MOTORISTS COVERAGE – MISSOURI

**I. PART C – UNINSURED MOTORISTS COVERAGE INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

2

> 1. Sustained by an "insured"; and
>
> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the "uninsured motor vehicle." . . .
>
> \* \* \*
>
> **C.** "Insured" as used in this Part means:
>
> 1. You.
>
> 2. Any "family member" who does not own an auto.
>
> 3. Any "family member" who owns an auto, but only while "occupying" "your covered auto." . . .

ECF No. 18 at 2-3.

It is undisputed that Ms. Swyers was not occupying either of the vehicles listed in the Policies at the time of the incident. In December of 2014, Ms. Swyers and her father, Stephen Swyers ("Mr. Swyers"),[1] obtained a 2014 Chevy Cruze ("the Cruze"). In her deposition in this case, Ms. Swyers asserted that she was the owner of the Cruze. Both daughter's and father's names appeared on the Cruze's title, and they both signed the financing agreement, with Mr. Swyers signing as the primary responsible party. Ms. Swyers insured the car through Nationwide.[2] Ms. Swyers also regularly drove the Cruze, was responsible for its maintenance, and paid monthly for the car and its insurance.

---

[1] Mr. Swyers was not married to or living with Ms. Swyers's mother, Ms. Burke, at the relevant time.

[2] This third policy, Policy Number PPNM0052316299, is not at issue in this case; however, prior to filing suit here, Nationwide paid $25,000.00 in UM coverage under that policy to Ms. Swyers as a named insured.

3

Mr. Swyers had no intention of regularly using the car, but after Ms. Swyers was injured in the Mudfest incident, Mr. Swyers kept the Cruze at his separate house for several months and, during that time, made payments for the car to avoid repossession, monitored its maintenance, and occasionally drove it. In his deposition in this case, Mr. Swyers indicated that he considered the vehicle both his and Ms. Swyers's.

On February 12, 2020, Nationwide filed its complaint for declaratory judgment in this Court, invoking the Court's diversity jurisdiction. Nationwide requests that this Court declare that the insurance policy in question provides no UM coverage to Ms. Swyers based on the fact that she owned a car at the time of the incident.

Ms. Swyers filed an answer and counterclaims for (1) a declaratory judgment that Ms. Swyers is entitled to full UM coverage under the Policies, (2) breach of contract regarding the Policies, and (3) vexatious refusal to pay under the Policies.

## **ARGUMENTS OF THE PARTIES**

Nationwide seeks summary judgment in its favor on its complaint and on Ms. Swyers's counterclaims. Nationwide argues that the Policies do not provide UM coverage for Ms. Swyers here because she is not the insured, she was not occupying an insured vehicle at the time of the incident, and she owned an auto—the Cruze—at the time of the incident. Nationwide contends that the appearance of Ms. Swyers's name on the Cruze's title is prima facie evidence of her ownership and that there is no basis for overcoming this presumption based on the facts of this case.

In response, Ms. Swyers does not dispute that she would only be entitled to UM coverage if she can prove that she did not "own" the Cruze at the time of the incident.

4

However, Ms. Swyers contends that there is a genuine issue of material fact as to whether she "owned" the Cruze. Specifically, Ms. Swyers argues that Nationwide's failure to define the word "own" in the Policies renders the term ambiguous and, as such, the term should be is interpreted in her favor to allow for coverage. To support this position, Ms. Swyers maintains that, although her name is on the Cruze's title, other facts rebut the presumption of ownership, including that Mr. Swyers maintained and made payments on the vehicle for several months after Ms. Swyers was injured. Further, Ms. Swyers argues that the test for ownership should inquire as to whether a party has the ability to encumber, sell, or otherwise destroy the vehicle. Because Ms. Swyers cannot unilaterally encumber the vehicle, she argues that she is not the owner.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007). The movant is entitled to summary judgment when the non-movant has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Eichenwald v. Small*, 321 F.3d 733, 736 (8th Cir. 2003).

5

"Interpretation of an insurance policy is a matter of state law." *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (citation omitted).  When deciding matters governed by state law, federal courts sitting in diversity are bound by the decisions of the state's highest court, and "[w]here no Missouri Supreme Court precedent exists on an issue, we predict what that court would decide and consider intermediate appellate court decisions in that process." *Am. Family Mut. Ins. Co., S.I. v. Mid-Am. Grain Distributors, LLC*, 958 F.3d 748, 751–52 (8th Cir. 2020) (citation omitted).

The only material question at issue is whether Ms. Swyers owned the Cruze, which turns on the definition of the word "own."  "Under Missouri law, the interpretation of the meaning of an insurance policy is a question of law." *Progressive Cas. Ins. Co. v. Morton*, 140 F. Supp. 3d 856, 860 (E.D. Mo. 2015).

When an insurance contract is unambiguous, "the policy must be enforced according to such language." *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 698 (Mo. 1982).  "An ambiguity exists only if a phrase is 'reasonably open to different constructions.'" *Doe Run Res. Corp. v. Am. Guar. & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. 2017) (quoting *Mendenhall v. Prop. & Cas. Ins. Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. 2012)).  "If the language is ambiguous it will be construed against the insurer" and "will be viewed in light of the meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Robin*, 637 S.W.2d at 698 (citation omitted).

Though "the meaning of 'owned' may vary in particular circumstances," the Court finds no meaning of the word which would reasonably lead to the conclusion that Ms.

6

Swyers did not own the Cruze. *See Manner v. Schiermeier*, 393 S.W.3d 58, 63 (Mo. 2013). "[C]ase law . . . indicates that [ownership] usually involves establishing either title . . . or the power to voluntarily destroy, encumber, sell, or otherwise dispose of the property." *Id.* (citation omitted). Nationwide adequately demonstrates that Ms. Swyers's name on the title of the Cruze, coupled with her payments for and use, upkeep, and sense of ownership of, the vehicle, prove that Ms. Swyers owned an auto and that the exception to UM coverage therefore applies. Mr. Swyers's involvement in the acquisition and his temporary maintenance of the Cruze *after* the incident here do not vitiate Ms. Swyers's ownership.

"Missouri is a strict title state," meaning that ownership of vehicles is typically determined by the name on the title. *Hedrick v. Kelley*, 734 S.W.2d 529, 532 (Mo. App. Ct. 1987). However, a vehicle's title provides only a rebuttable presumption of ownership, which can be overcome. *Case v. Univ. Underwriters Ins. Co.*, 534 S.W.2d 635, 639 (Mo. App. Ct. 1976). Successful rebuttal of the presumption of ownership is rare in the context of UM coverage disputes. *See Manner*, 393 S.W.3d 58 ((holding that motorcycle belonged to claimant's uncle, whose name was on the title); *Hedrick*, 734 S.W.2d 529 (holding that car belonged to claimant's mother, whose name was on the title). Missouri courts have declined to formulate a specific test for which facts, if true, could rebut the presumption of ownership, but the primary case relied upon by Ms. Swyers in which the presumption was so rebutted is readily distinguishable from this case. *See Lightner v. Farmers Ins. Co.*, 789 S.W.2d 487 (Mo. 1990).

Ms. Swyers argues that the *Lightner* case is "substantially identical factually" to the case before us. ECF No. 19. However, a close reading of *Lightner* reveals several crucial differences. In *Lightner*, a father purchased the truck at issue and only added his son's name to the title in case "something happened" to the father. 789 S.W.2d at 489. The father was the sole party financially responsible for obtaining and insuring the truck, the father considered the truck solely his own, his son drove the truck only with the father's permission, and although his son planned to purchase the truck from him at a later date, that purchase was never completed. *Id.* For these reasons, the court held that "[t]he presence of [the son's] name on the title [was] not the single controlling factor" and that the trial court properly concluded that the father, rather than the son, owned the truck for the purpose of UM coverage. *Id.* at 490-91.

By comparison, Ms. Swyers was a much more active participant in acquiring and maintaining the Cruze. Ms. Swyers's name was added to the vehicle title upon acquisition, and both she and her father signed the financing agreement. Ms. Swyers also took on recurring responsibilities related to the vehicle, such as paying monthly for the Cruze, obtaining and paying for car insurance, and overseeing routine repairs. Crucially, Ms. Swyers and her father both acknowledge that she had an ownership interest in the car. Unlike in *Lightner*, the facts in this case indicate that Ms. Swyers's name on the title is more than a mere technicality and, as such, the presumption of ownership has not been overcome.

Nationwide contends, and the Court agrees, that the more appropriate point of comparison is *McBride v. Farm Bureau Town & Country Ins. Co. of Mo.*, 588 S.W.3d

8

644 (Mo. App. Ct. 2019).[3] In *McBride*, the Missouri Court of Appeals considered the potential ambiguity of the word "own" in an exceptions clause governing UM coverage. Like Ms. Swyers, the claimant in *McBride* was listed on the vehicle title along with a parent and argued that this was insufficient to show ownership. The Missouri Court of Appeals disagreed and ruled that "the word 'owns' . . . is not ambiguous, and that McBride's status as co-owner does not vitiate the exclusion from UM coverage for any family member who 'owns' a car." *Id.* at 648. The court based its decision on two previous state supreme court decisions, both of which held that the definition of "own" includes co-ownership, as demonstrated by the presence of the claimant's name on the vehicle title. *See Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245 (Mo. 2019) (holding that "own" included co-ownership when the term was defined by the contract); *Lair v. Am. Family Mut. Ins. Co.*, 789 S.W.2d 30 (Mo. 1990) (holding that "own" included co-ownership when the term was not defined by the contract). Though Ms. Swyers maintains that the Court should disregard *McBride* as wrongly decided, its use of precedent and parallels to the current case lead the Court to find it both properly decided and applicable to the facts at hand.

Ms. Swyers also contends that, because she cannot unilaterally sell, destroy, or otherwise permanently encumber the Cruze, she does not own it. Though ability to sell or destroy a vehicle has been used by Missouri courts to determine ownership, this Court

---

[3] Though this case was not decided by the highest court of the state and is, therefore, not binding, the Court believes that its recency and strong parallels to the case before us make it a useful indicator of how the Missouri courts would decide the present case.

can find no decision which states that the absence of such power automatically defeats ownership. In *McBride*, such an argument was explicitly rejected by the Missouri Court of Appeals. 588 S.W.3d at 647. If such a statement were true, then all forms of joint ownership of vehicles would be effectively invalidated. This conclusion is fundamentally at odds with the body of Missouri case law upholding co-ownership of vehicles. *See Poetz v. Klamberg*, 781 S.W.2d 253 (Mo. Ct. App. 1989) (discussing joint ownership of a vehicle). As such, the Court declines to hold that lack of ability to unilaterally sell or destroy defeats all other indications of ownership.

Finally, Ms. Swyers presents no reasonable, alternative theory of ownership of the Cruze. If the Court were to adopt Ms. Swyers's argument that her legal claim to the Cruze was not enough to constitute ownership, then no one would own the Cruze. Though Mr. Swyers also had some investment in the car, his was markedly less than his daughter's and so he would also be unable to meet Ms. Swyers's test for ownership. In the UM coverage cases cited by Ms. Swyers in which ownership was lacking, the court found some other person or legal entity had a stronger ownership interest than the claimant. *See United Fire & Cas. Co. v. Hall*, 536 S.W.3d 738 (Mo. Ct. App. 2017) (holding that the claimant's ownership interest in the vessel existed only in his role as trustee); *Manner*, 393 S.W.3d 58 (holding that a motorcycle belonged to the claimant's uncle, whose name was on the title); *Lightner*, 789 S.W.2d 487 (holding that a car belonged to the claimant's father, whose name was also on the title and who paid for the vehicle); *Hedrick*, 734 S.W.2d 529 (holding that the car belonged to the claimant's

10

mother, whose name was on the title).  Here the opposite is true.  Moreover, to rule that no owns the car is not reasonabl, and so the Court declines to do so.

In short, the Court concludes that Ms. Swyers owned the Cruze at the time of the incident such that she is not entitled to UM coverage under the Policies here.  Therefore, Nationwide is entitled to summary judgment on its complaint and on Ms. Swyers's counterclaims.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiff / Counterclaim Defendant Nationwide Insurance Co. of America's motion for summary judgment on all claims and counterclaims is **GRANTED**.  ECF No. 10.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 7th day of July, 2020.